IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HEATHER GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-284 (MN) |
| | ) |
| JAMES STANTON and TIMOTHY B. CLARK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Patrick K. Gibson, IPPOLITI LAW GROUP, Wilmington, DE – Attorneys for Plaintiff

Kenneth L. Wan, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants

September 30, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

On February 19, 2018, Plaintiff Heather Green ("Plaintiff" or "Ms. Green") filed a Complaint pursuant to 42 U.S.C. § 1983 against various John Doe correctional officers and medical personnel in connection with an injury Plaintiff suffered on October 17, 2017 while shackled. (D.I. 1). On July 6, 2018, Plaintiff filed an Amended Complaint, asserting claims based on 42 U.S.C. § 1983 as well as state law negligence against Defendants Lieutenant James Stanton ("Stanton") and Sergeant Timothy B. Clark ("Clark") (collectively "Defendants").[1] (D.I. 6). Specifically, her Amended Complaint alleges that Stanton used "unlawful and unnecessary" force (D.I. 6 ¶¶ 36, 50) and that both Stanton and Clark exhibited deliberate indifference to a serious medical need and inhumane prison conditions (D.I. 6 ¶¶ 51, 52, 56, 57). Pending before the Court is Defendants' motion for summary judgment. (D.I. 24). For the reasons discussed below, Defendants' motion will be granted.

**I.    BACKGROUND**

Plaintiff's claims arise from her interactions with Defendants on October 17, 2017. The facts are largely undisputed.[2]

Since birth, Plaintiff has suffered from a severe form of scoliosis that has left her spine in an "S" shape. Her condition is visible. (D.I. 28 at 1-2). In August of 2017, Plaintiff was arrested

---

[1]  Plaintiff has stipulated to the dismissal of her negligence claims. (D.I. 28 at 15). Those claims are dismissed with prejudice.

[2]  Pursuant to the Court's procedures, Defendants filed a Concise Statement of Facts ("Defendants' Statement of Facts") with their motion for summary judgment. (D.I. 26). Plaintiff did not file a response to Defendants' Statement of Facts. On June 18, 2020, the Court ordered Plaintiff to "file a response to Defendants' Concise Statement of Facts no later than 6/30/2020" and stated that "[f]ailure to do so shall indicate that the facts are not in dispute for purposes of summary judgment." (D.I. 34). Thereafter, Plaintiff did not file a response disputing any of Defendants' Statement of Facts, but instead filed her own Concise Statement of Facts. (D.I. 36).

1

and charged with unlawful use of a payment card and violation of probation. (D.I. 36 ¶ 1). On September 21, 2017, Plaintiff was incarcerated at the Baylor Women's Correctional Institute ("Baylor") to await disposition of her criminal case. (*Id.* ¶ 2). While incarcerated, Plaintiff was transported a number of times from Baylor to the Leonard L. Williams Justice Center ("the Justice Center") for proceedings in the Superior Court of Delaware. (D.I. 36 ¶ 7). It is standard practice for Department of Correction ("DOC") personnel to place ankle shackles on inmates during transport, but officers have some discretion. (D.I. 25 at A11-13; D.I. 26 ¶ 9). Using this discretion, officers escorting Plaintiff on a number of transports to the Justice Center opted not to use ankle shackles on Plaintiff due to her medical condition.[3] (D.I. 36 ¶ 11-12).

On October 17, 2017, upon arriving at the Justice Center's holding cells, however, Defendant Stanton, the officer in charge, ordered the officers transporting Plaintiff to place her in ankle shackles. (D.I. 36, Ex. 2 at 30:17-20). The officers complied. Stanton explained that shackles are not used if there are certain medical restrictions, but that if such restrictions exist, the officers transporting the inmate would be given a memo from the medical provider at the correctional facility. (D.I. 25 at A46). He testified that in the absence of such a memo, protocol is generally to use shackles. (*Id.* at A46-47). Stanton also testified that DOC personnel are generally not allowed to ask inmates about medical conditions. (*Id.* at A16-17).

As to Plaintiff, Stanton testified that he believed that ankle restraints were required and posed no safety risk. (*Id.* at A23, A38-40). He testified that he was unaware of any memo

---

[3]  Plaintiff testified that two of the officers who transported her on trips to the Justice Center, Cpl. Cain and Cpl. Burton, did not believe Plaintiff was a flight risk. (*See*, D.I. 36 ¶ 13, Ex. 3 at 7:16-22). An incident report written by Cpl. Burton confirms that, stating: "Cpl. Burton and Cpl. Cain made the decision not to transport [Plaintiff] wearing shackles in past because of a possible tripping hazard." (D.I. 36 ¶ 14, Ex. 4). As does an incident report submitted by Cpl. Cain. (D.I. 36 ¶ 16, Ex. 5).

indicating Green could not be placed in ankle restraints and that he believed that she was no less a threat than any other inmate having observed her move quickly a few days before. (D.I. 25 at A38-39, A51).[4] Stanton was not disciplined or reprimanded for ordering ankle restraints to be placed on Green. (*Id.* at A44).

Once shackled, Plaintiff waited in a holding cell until it was time for her to meet with her attorney. (D.I. 36 ¶ 18). At the appointed time, Defendant Clark, who worked as a runner escorting inmates from holding cells to and from the attorney interview rooms, entered the holding cell. (D.I. 25 at A71-74). He put cuffs on Plaintiff and escorted her to meet her attorney. Clark testified that the protocol for escorting an inmate at the Courthouse (and anywhere else) is to walk in a defensive manner, which means walking behind an inmate at approximately an arm's length. (*Id.* at A81). He added, however, that he would not let an inmate just fall, and would catch the inmate if he could. (*Id.* at A82).

Clark saw Green for the first time when he escorted her to the interview room. (D.I. 25 at A71). He noted that she did not limp and that she made it to the interview room without any problem. (*Id.* at A83-84). Clark testified that he is not allowed to ask inmates about perceived medical conditions, but has to listen if the inmate volunteered the information. (*Id*. at A84). Green, however, did not volunteer any information about any medical condition. (*Id.*). Nor did she express any concerns to Clark about the shackles. (*Id.* at A117-118).

After the attorney meeting, Clark escorted Plaintiff back to the holding cell. (D.I. 36 ¶ 19). On the way, Plaintiff fell and then fell again as she was being helped up. (*Id.* ¶¶ 20-22, Ex. 1 at 26:9-21). Clark and another officer then helped Plaintiff into a wheelchair and she was transported

---

[4]  No party has suggested that such a memo exists. And Plaintiff has not disputed Stanton's testimony that he had observed her moving quickly.

3

back to Baylor and ultimately sent to the infirmary. (D.I. 36 ¶ 24). Plaintiff asserts that she was injured from the fall, and that those involved in her fall and her subsequent care were not sympathetic. (D.I. 36 ¶¶ 26-27, Ex. 3 at 19:7-20:2, 37:18-40:8).

After pleading guilty to the charges against her, Plaintiff was released from Baylor on November 8, 2017, after being sentenced to time-served. (D.I. 6 at 5; D.I. 36, Ex. 3 at 23:3-24:3).

## II. LEGAL STANDARDS

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). The Court may not grant summary judgment if a "reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### III. DISCUSSION

#### A. 42 U.S.C. § 1983 Claims

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

"In order to recover under § 1983, a plaintiff must show that the defendant, under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Renda v. King,* 347 F.3d 550, 557 (3d Cir. 2003) (citing § 1983); *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 (3d Cir. 2000).

"Section 1983 is not a source of substantive rights . . . the plaintiff must allege a violation of a federal right." *Berg*, 219 F.3d at 268; *Estate of Smith v. Marasco,* 318 F.3d 497, 505 (3d Cir. 2003) (Section 1983 "merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."). Thus, "[t]o state a claim under [Section] 1983, a plaintiff

5

must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). The threshold question, therefore, is whether the alleged action violates a Constitutional right.

1. Excessive Force (Stanton)

In her Amended Complaint Plaintiff asserted that Defendant Stanton used excessive force in violation of the Eighth Amendment. As a pretrial detained, however, Plaintiff's excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, ⸺ U.S. ⸺, 135 S.Ct. 2466 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).[5] To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)). The court considers: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff

---

5    Analyzed under the Eighth Amendment, the results would be no different. Claims of use of excessive force require consideration of "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (citation and internal quotation marks omitted). The "core judicial inquiry," is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (referring to *Whitley*). Here, there is no evidence that Plaintiff was placed in leg restraints for any malicious or sadistic reason. Rather, as discussed *infra*, the evidence indicates that Plaintiff was placed in ankle shackles pursuant to protocol, for officer safety, and to prevent escape.

6

was actively resisting." *Id.; see also Robinson v. Danberg*, 673 Fed. Appx. 205, 209 (3d Cir. 2016) (court to consider all *Kingsley* factors in pretrial detainee excessive force claim).

Viewing the record in light of these factors, the Court finds that Plaintiff cannot prevail on her claim against Stanton. The record reflects that Stanton's order to place Green in ankle restraints was not done to punish Green. As discussed above, Stanton testified that the shackles were placed on her pursuant to standard DOC policy to prevent escape. There was no memo from a medical provider at the correctional facility indicating that Plaintiff should not be shackled because of her scoliosis. Although the effect of Plaintiff's scoliosis is visible, Stanton was not allowed to ask her about her medical condition. And although Cpls. Burton and Cain indicated that they had not shackled Plaintiff in the past due to a possible tripping hazard, they did not inform Stanton that Plaintiff's medical condition prevented her from being placed in ankle shackles. And it is undisputed that Stanton had seen Plaintiff able to move quickly in recent times. This evidence indicates that Stanton placed ankle shackles on Plaintiff as he would on any inmate, for officer safety and to prevent escape.

Moreover, the touchstone of a due process claim is whether the application of force was punitive. *See Kingsley*, 135 S.Ct. at 2473. Even when construing the evidence in the light most favorable to Plaintiff, it cannot be said that Stanton's use of force (ordering shackles to be placed on Plaintiff) was objectively unreasonable. Indeed, it was done pursuant to standard DOC policy and in the absence of any medical instructions to the contrary.

### 2. Excessive Force (Clark)

In her Answering Brief (D.I. 28 at 11), Plaintiff asserts that Defendant Clark used cruel and excessive force when he kept Plaintiff in shackles as he transported her to the attorney

7

interview.[6] No such claim, however, is alleged against Clark in Plaintiff's complaint. "[A] claim that has not been timely raised is waived. *Spence v. City of Philadelphia*, 147 F. App'x 289, 291 (3d Cir. 2005); *see also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641-42 (3d Cir. 1993). In *Spence*, like here, the plaintiff failed to raise a claim in his complaint, and instead raised it during summary judgment proceedings. *Spence*, 147 F. App'x at 292. The court held that plaintiff waived his right to bring the claim, reasoning that allowing plaintiff "to add a new theory of liability at summary judgment would have impermissibly prejudiced the [defendant] because the [defendant] faced different burdens and defenses under this second theory of liability." Similarly, here, Plaintiff waived any excessive force claim against Clark because she did not plead the claim in her Complaint, and did not raised it until after the close of discovery.

        3.        Deliberate Indifference

Plaintiff asserts that both Stanton and Clark exhibited deliberate indifference to a serious medical need and subjected her to inhumane conditions by ordering ankle shackles be placed on her although she suffered from scoliosis. To establish a claim of inadequate medical treatment, an inmate must demonstrate "(1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Apgar v. Williams*, 2009 WL 774373, at *2 (D. Del. Mar. 24, 2009) (internal citation omitted). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official deprived the prisoner of the minimal civilized measure of life's necessities and acted with deliberate indifference in

---

[6] Plaintiff argues that "Defendant Clark in his discretion, could have removed Plaintiff's ankle shackles on the day in question, but failed to do so. For all of the reasons stated above, Defendant Clark is equally culpable in participating in the cruel and unnecessary shackling of Plaintiff's legs on the date in question, ultimately resulting in her fall." (D.I. 28 at 11). Even if the claim had not been waived, for the reasons that the Court has found that Plaintiff's claim against Stanton fails, it would also fail against Clark.

8

doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health." *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (citation and internal quotations omitted). "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard." *Wilson v. Seiter*, 501 U.S. 294, 303, (1991) (citation and internal quotations omitted) (alteration in original). "A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm." *Bredbenner v. Malloy*, 30 F. Supp. 3d 277, 281 (D. Del. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To establish deliberate indifference, the plaintiff must demonstrate that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[P]laintiff must show that the defendants knew of the risk to [her] and disregarded it and that such acts or omissions caused plaintiff['s] injury." *Grubb v. Marconi*, 237 F.Supp.3d 181, 190 (D. Del. 2017) (citation omitted).

Here, Plaintiff cannot demonstrate that Stanton or Clark acted with deliberate indifference or subjected her to inhumane conditions. As previously discussed, Stanton testified that he was not aware that Green faced a serious risk of harm. Stanton had received no memo indicating that shackles should be avoided. And he testified that, notwithstanding her condition, he previously saw Plaintiff move quickly, such that ankle shackles were appropriate.

Clark likewise testified that prison facility medical providers provide a memo or notification to transporting officers if an inmate should not be placed in ankle restraints, but that he had not received such a memo. (D.I. 25-1 at A94). Additionally, when Clark first saw Plaintiff,

9

she already had the ankle shackles on. She did not, however, inform Clark about any disability nor did she express any concerns regarding the shackles to him. Clark escorted Plaintiff pursuant to DOC training and protocol, which instructed him to walk behind Plaintiff (D.I. 25-1 at A81; D.I. 26 ¶ 17), but that he would have tried to prevent her from falling if he could have (D.I. 25-1 at A81; D.I. 26 ¶ 18). After Plaintiff fell, Clark also immediately asked Plaintiff if she was okay and helped her into a wheelchair. (D.I. 25-1 at A86-87; D.I. 26 ¶ 20).

### B. Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The doctrine of qualified immunity extends to mere mistakes in judgment, whether the mistake is one of fact or law. *Butz v. Economou*, 438 U.S. 478, 507 (1978).

For the reasons previously stated, Stanton's actions in connection with his ordering Plaintiff to be shackled were objectively reasonable, as were Clark's actions in leaving the shackles on her. There was no violation of a statutory or constitutional right, and Defendants are entitled to qualified immunity.

### IV. CONCLUSION

For the reasons stated above, the Court will grant the Defendants' motion for summary judgment. An appropriate order will be issued.

10